## PHILLIPS v. SHREVEPORT RYS. CO.

### No. 5132.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 6, 1935.

William C. Boone and Albert P. Garland, both of Shreveport, for appellant.

Wise, Randolph, Rendall & Freyer and J. N. Marcantel, all of Shreveport, for appellee.

MILLS, Judge.

Plaintiff testifies that on April 20, 1934, at about 1:30 p. m., she boarded, at the intersection of Texas and Jordan streets, car No. 77 of the Shreveport Railways Company, on her way home to Cedar Grove. She says that the car was very crowded, compelling her to stand hemmed in at the front end holding onto an upright bar. That, when about half of the journey had been completed, the car stopped very suddenly at a way station, throwing her forward against a brake wheel and lever, injuring her side, back, hips, and particularly her coccyx bone. She did not call the motorman's attention to the accident nor report any injury to him. She alighted at her stop, went home and to bed.

As to the facts of the accident, plaintiff is corroborated by six eyewitnesses. She did not call a physician, but ten days later applied to the Charity Hospital for an examination. X-rays were taken and a careful examination made. Dr. Oscar O. Jones, X-ray examiner for the hospital, says the X-ray films show no fractures, dislocations or injury, and no abnormality. Dr. J. S. Rushton, an interne, made the physical examination of the chest, pelvis, and coccyx, the parts complained about. He states that a careful examination disclosed no fracture and no cause for the pain complained of. Dr. Teer, who is also supposed to have examined her, has left here and does not testify. A letter from him filed in evidence states that he has no independent recollection of the case.

Drs. Cassity, Huckaby, and Scott testify for plaintiff. Dr. Cassity, who examined her first on June 12, 1934, and again about two weeks prior to the trial, which was held December 13, 1934, says that, in addition to plaintiff's subjective complaints of pain, he found the motion of the spinal column limited and the coccyx bone unusually movable. His conclusions are: "Sprain of muscles of left side and chest and sprain of lumbar muscles and ligaments, injury to coccyx, possible fracture or dislocation."

He considers her disability from two years to permanent. He had no X-ray made and saw no pictures.

Dr. Huckaby says he examined plaintiff on November 12, 1934, and found extreme tenderness, but no bone displacement and free movement. His diagnosis was: "severe strain or fracture of the coccyx." He thinks she is liable to suffer pain over a number of years.

Dr. Scott says he examined plaintiff about three weeks prior to the trial. He found mild tenderness over the left sixth rib and under the sacroiliac joints, and extreme tenderness over the coccyx, which showed abnormal movement. He says the X-ray showed a change of location and fracture of the coccyx.

Dr. A. Jerome Thomas, who specializes in radiology and assists at the Charity Hospital, examined in court the X-ray plates made at the Charity Hospital. He found some abnormality in the shape of the coccyx, which might have been congenital or may have been due to trauma. He says that the X-ray plates show a fracture of the ribs, but does not say that any fracture or dislocation of the coccyx is disclosed, though he finds it reasonable, considering the history given, that such a fracture and dislocation may have taken place.

Dr. W. H. Browning, for defendant, made a complete physical examination of plaintiff on October 29, 1934, at the Highland Clinic. He found her suffering from hardening of the blood vessels and high blood pressure. He could find no objective symptoms whatever in justification of plaintiff's complaint of pain in the region of the coccyx. A thorough external and internal examination and manipulation of the coccyx disclosed nothing wrong with it. We thus have the usual hopeless conflict as to the existence of an injury due to trauma.

As plaintiff admits that she did not inform the motorman of her accident and is corroborated by her witnesses to the effect that the motorman did not see it, defendant is relegated to a purely negative defense.

Defendant was running six cars on the Cedar Grove line on April 20, 1934. The motorman of each of these takes the stand and testifies that no such accident happened on that date on their cars. That, had one happened, as alleged, it would have occurred directly in front of them, where it would have been impossible for them not to notice and report it. They also offer their trip sheets showing that no car at about the time alleged was crowded, or even filled to capacity. It is intimated that the cars were crowded because Feibleman's gave free passage on that day. It is shown that this was done in November, and not April. It is also shown that, because of the construction of the cars, it would have been improbable for the accident to have happened as alleged.

The trial judge, after a personal examination of it, being of the opinion the accident could not have happened on car 77, continued the case to enable plaintiff to amend and allege the proper time and car. In the amendment and ensuing testimony, plaintiff stands upon the identification of car 77 and the date originally alleged.

The trial judge felt called upon to decide the case before the testimony was transcribed, but his written opinion shows a clear recollection of the facts. We quote it in full:

"This is a suit for damages in which Mrs. Phillips alleges that on April 20, 1934, between one and two o'clock in the afternoon, she entered street car No. 77 of the defendant, proceeding to Cedar Grove, paid her fare, found it necessary to stand up on account of the crowded condition of the car; and that she was holding to an upright near the motorman, to support herself. She further alleges that the car was travelling at an excessive rate of speed, and that it came to an abrupt stop, throwing her, first, against the upright, to which she was holding, and then back against certain metal controls in the front of the street car, permanently injuring her coccyx.

"The defense is a denial that any accident occurred at all.

"The testimony in the case has not been transcribed, the case being brought in forma pauperis, and the Court feeling constrained to proceed to a decision without awaiting the transcription of the testimony. This, however, presents some difficulties in writing an opinion, a written opinion being requested of the Court, so the Court must rely upon its memory.

"The trial was had sometime ago, and the names of all the witnesses have not remained with us. However, the Court is clear in its recollection of the outstanding facts in the case, largely because near the end of the first hearing it appeared to the Court that the plaintiff at that time had met the burden of proof in establishing that she had been thrown by some jolt of the car against some machinery which

caused her at least a certain amount of injury, but that she was in error as to which car she was riding in, in view of certain testimony adduced on the trial by the defendant and in view of the fact that the Court had inspected Car No. 77 in question.

"Certain witnesses had testified for the plaintiff referring to the long seats in the front of the car running parallel with the length thereof, and it was very evident that Car No. 77 was of such a construction that these seats did not exist. Likewise, it was evident that there was no step-down from the main body of the car to the platform, but the platform was on a level with the main part of the car. The testimony at that point was merely to the effect that the motorman of Car No. 77 on that particular run neither saw the accident nor knew of it; nor was his car crowded at that time. The Court feeling that possibly some error had been made by the plaintiff in describing Car No. 77, continued the case with the privilege granted to plaintiff to amend, and the privilege granted defendant to meet whatever issues would thereby be presented.

"The plaintiff amended without really changing the issues, but merely alleged that, according to her memory and recollection, which might be erroneous, she entered the car of the defendant at that time and place, which car bore No. 77.

"On the succeeding trial she attempted to prove that April 20, 1934, was the date of a certain bargain day at a local department store, which supplies free transportation through the Shreveport Railways Company; but in this effort the plaintiff failed, and in no manner could she establish by any new testimony that the street car was so crowded that it necessitated her standing.

"The defendant then produced all of its trip sheets of all motormen operating cars on that run on that date, and anywhere near approximating the time that plaintiff alleges the accident occurred. They were consistent in their testimony that no accident occurred on their car, and the trip sheets indicate that no car on that date was crowded to capacity. Plans were introduced showing the type of construction of each car.

"Plaintiff is corroborated in her statement of the case by several witnesses, who stated they were passengers on the car, to the effect that she was standing, and that the jostle of the car threw her, but without actually knocking her down. One witness testified that she got off the car with plaintiff and walked home with her, and that she was bruised. She did not receive medical attention. Other witnesses who were on the car did not see anyone jostled sufficiently to be injured, and the motorman testified that no accident happened; that he didn't see anyone jostled about to such an extent; that if he had he would have made a report of it; that the point where she alleges she was hurt in the street car was so close to him that he could not have failed to see it if it had happened.

"Mrs. Phillips, as stated above, impressed the Court as being sincere, but we are forced at this time to come to the conclusion that there was some error, either in the street car or the date, which left the defendant without means of presenting a defense to the case, particularly in view of the fact that the Company's attention was not called to the matter, directly or indirectly, at the time of the happening of the accident; Mrs. Phillips herself not mentioning it to the motorman. Normally, in street car accident cases the defendant company is in a better position to produce evidence than the plaintiff, but in a case where the plaintiff's accident is not evident at the time of its happening, and the motorman's attention is not called thereto, the defendant is at a disadvantage, and that is the case here.

"The corroborating testimony of the plaintiff is conflicting, particularly with regard to the type of street car, and as to whether or not the car was proceeding at an undue rate of speed, and whether it jolted plaintiff at all.

"So much doubt is thrown around the situation by reason of these facts, and by further reason of the positive proof submitted by the defendant that the car was not crowded on that occasion, and no accident was evident to the motorman, who should certainly have seen it, that we are constrained to hold that plaintiff has failed to meet the burden of proof imposed upon her in such a case, and therefore her demands are rejected.

"Cecil Morgan,
"District Judge."

Plaintiff has appealed from the judgment rejecting her demands.

It is well settled that, where only an issue of fact or the credibility of witnesses is involved, the finding of a trial judge should only be reversed when mani-

festly erroneous. We cannot so find the statement of the trial judge that, after a personal inspection of car No. 77, he is convinced the accident could not have happened upon it; particularly as it is supported by diagrams of the car filed in evidence; and the report of the motorman made at a time unsuspicious. Ordinarly, the correct judgment in a case of this character should be one of nonsuit, but, an opportunity to amend having been given without plaintiff changing her position as to the car and date, a nonsuit would be futile.

The judgment appealed from is accordingly affirmed.